## IN THE UNITED STATES BANKRUPTCY COURT
### Southern District of Iowa (Des Moines)

In re:

Dennis A Minarich                             CASE NO.  23-00536
Heather C Minarich                            CHAPTER 13
                    DEBTOR(S).

## MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VI-A,   ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor(s) having an address of 3005 Indianola Avenue, Des Moines, IA 50315 (the "Property") or in the alternative, dismiss this case.  In support of this Motion, Movant respectfully states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor(s) on May 1, 2023.

2.      Pursuant to a certain Note and Mortgage, all obligations of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property.  Copies of the Note, Mortgage, and Assignment of Mortgage (if applicable) and a Payment History are attached hereto.

3.      The promissory note has been duly indorsed.

4.      As of August 1, 2023 the outstanding amount due is $147,168.34.

5.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested herein, Movant has also incurred $850.00 in legal fees and $176.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

6.      The debtor is due post-petition for the May 1, 2023 payment, a default of 4 months, totaling $4,489.93.

7.      The estimated market value of the Property is $80,000.00.  The basis for such valuation is Debtor's Schedules.

8.      Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $147,168.34.

9.   There has been no offer of adequate protection that has been made by the Debtors.

10. Cause exists for relief from the automatic stay for the following reasons:

     A. Movant's interest in the Property is not adequately protected.

     B. Movant's interest in the collateral is not protected by an adequate equity cushion.

     C. The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

     WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Terminating the automatic stay of 11 U.S.C. § 362(a) to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4. In the alternative, dismissal of this case for material default of the plan provisions.

5. For such other relief as the Court deems proper.

Respectfully submitted:

/s/Aaron H. Ginkens
Aaron H. Ginkens
Attorney for Creditor

Wirbicki Law Group LLC
Attorney for Creditor
33 W MONROE STREET, SUITE 1540
CHICAGO, IL 60603
Phone: (312) 360-9455
Fax: (312) 360-9455
WN23-0031

**THIS COMMUNICATION IS FROM A "DEBT COLLECTOR." (15USC 1692a)**

**<u>Certificate of Service</u>**

The undersigned hereby certifies, under penalty of perjury, that a copy of the instrument to which this Certificate is attached was served electronically and/or mailed via the United States mail with postage fully paid on August  4    , 2023 to the parties displayed below.

/s/ <u>Aaron H. Ginkens</u>
Aaron H. Ginkens

Copies to:

Samuel Z. Marks, Esq.
4225 University Ave
Des Moines, IA 50311
Attorney for Dennis A. Minarich
Attorney for Heather C. Minarich

Dennis A. Minarich
Heather C. Minarich
3005 Indianola Ave
Des Moines, IA 50315

United States Trustee
Federal Bldg, Room 793
210 Walnut Street
Des Moines, IA 50309

Trustee Charles Smith
25 Main Place, Suite 200, PO Box 248
Council Bluffs, IA 51502-0248




# ORIGINAL

**IOWA**          **NOTE**          FHA Case No.

June 8, 2007
    [Date]

3005 Indianola Ave, Des Moines, IA 50315
                 [Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means American Home Mortgage

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of   Ninety Seven Thousand Four Hundred Seventy and No/100

Dollars (U.S. $ 97,470.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One Half percent (      6.500  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on August 1st   , 2007    . Any principal and interest remaining on the first day of  July 2037      , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at  PO Box 660029, Dallas, TX  75266-0029

        or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $  616.08        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a



610   162758828   N   001   001



partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| Dennis A. Minarich            -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

4156

Doc ID: 019994860008 Type: GEN
Recorded: 06/11/2007 at 03:41:20 PM
Fee Amt: $42.00 Page 1 of 8
Polk County Iowa
JULIE M. HAGGERTY RECORDER
File# 2007-00104870

BK **12234** PG **366-373**

——————————— [Space Above This Line For Recording Data] ———————————

Prepared By:
Linda Shannon
2829 Westown Parkway, Suite 220
West Des Moines, IA 50266
515-224-0204
Return To: RETURN TO:
American Home Mortgage
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250

Full Legal Description located on page    2

State of Iowa

# MORTGAGE

| FHA Case No. |
| --- |
| |

MIN

THIS MORTGAGE ("Security Instrument") is given on    June 8, 2007
The Mortgagor is    Dennis A. Minarich, a single person

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

DOC #:314511                                        APPL #:0001735977
FHA Iowa Mortgage with MERS - 4/96
-4N(IA) (0405).01                  Amended 5/04
Page 1 of 8          UM31 0405.02    Initials:
VMP Mortgage Solutions, Inc. (800)521-7291

American Home Mortgage
("Lender") is organized and existing under the laws of State of New York , and
has an address of 538 Broadhollow Rd, Melville, NY 11747
. Borrower owes Lender the principal sum of
Ninety Seven Thousand Four Hundred Seventy and No/100
Dollars (U.S. $ 97,470.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2037 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and
convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns
of MERS the following described property located in Polk
County, Iowa:
Lots Fifty-one (51) and Fifty-two (52) in JEFFERSON HEIGHTS REPLAT, now
included in and forming a part of the City of Des Moines, Polk County, Iowa.

Parcel ID Number:
which has the address of 3005 Indianola Ave [Street]
Des Moines [City], Iowa 50315 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered
by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower
understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument;
but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns),
has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security
Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest
on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment,
together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special
assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and

DOC #:314512 APPL #:0001735977 Initials: _____

-4N(IA) (0405).01 Page 2 of 8

(c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

DOC #:314513          APPL #:0001735977

Initials: _____

VMP®-4N(IA) (0405).01          Page 3 of 8

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

DOC #:314514            APPL #:0001735977

-4N(IA) (0405).01            Page 4 of 8                                      Initials: _____

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any

DOC #:314515        APPL #:0001735977

Initials: _____

-4N(IA) (0405).01        Page 5 of 8

notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

DOC #:314516          APPL #:0001735977

Initials: _____

VMP®-4N(IA) (0405).01          Page 6 of 8

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

20. **Waivers.** Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

21. **Redemption Period.** If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this paragraph 21 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Other [specify]
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider

23. **HOMESTEAD EXEMPTION WAIVER. I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE.**

| | | | |
|---|---|---|---|
| Borrower Dennis A. Minarich | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

DOC #:314517     APPL #:0001735977

-4N(IA) (0405).01     Page 7 of 8

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____  _____ (Seal)
                                        Dennis A. Minarich            -Borrower

_____  _____ (Seal)
                                                                      -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                                    -Borrower


STATE OF IOWA, Polk                          County ss:

On this      8th      day of  June,  2007                      , before me, a Notary Public in the
State of Iowa, personally appeared  Dennis A. Minarich  , a single person


to me personally known to be the person(s) named in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their voluntary act and deed.

My Commission Expires:

                                        _____
                                        Notary Public in and for said County and State

DOC #:314518            APPL #:0001735977

VMP®-4N(IA) (0405).01             Page 8 of 8

**Recorded: 9/30/2021 at 9:15:36.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**Polk County, Iowa**
**Julie M. Haggerty RECORDER**
**Number: 202100103244**
**BK: 18780 PG:   590**

**Document Prepared by:** ISABEL MOLINA, COMMUNITY LOAN SERVICING, LLC, 4425 Ponce De Leon Blvd, 5th Floor, Coral Gables, FL, 33146, (800) 457-5105
**When Recorded Mail To:** DENA NOBLE, C/O AMIP MANAGEMENT, 3020 OLD RANCH PKWY #180, SEAL BEACH, CA, 90740



## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #: ▮▮▮▮▮ / TS Ref #: 0013180000000827 / Client Ref #: 001247191B
IA/POLK

Assignment Prepared on: August 20, 2021

**Assignor: BAYVIEW DISPOSITIONS IVB, LLC**, at 4425 PONCE DE LEON, 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee: WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST VI-A**, at C/O AMIP MANAGEMENT, 3020 OLD RANCH PKWY #180, SEAL BEACH, CA, 90740

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage dated 6/8/2007, in the amount of $97,470.00, executed by DENNIS A. MINARICH, A SINGLE PERSON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS and Recorded: 6/11/2007, Instrument #: 2007-00104870, Book: 12234, Page: 366 in POLK County, State of Iowa.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

BAYVIEW DISPOSITIONS IVB, LLC

On: SEP 0 8 2021

By: _____
Name:      DAVID BRIGGS
Title:      FIRST VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

The foregoing instrument was acknowledged before me by means of ✓ physical presence or ___ online notarization, this _____, by, DAVID BRIGGS, FIRST VICE PRESIDENT, of BAYVIEW DISPOSITIONS IVB, LLC a FLORIDA corporation, on behalf of the corporation. He/She is personally known to me or has produced _____ as identification.

WITNESS my hand and official seal,

_____
Isabel Molina
Notary Expires: 5/7/2023 / #: GG 331968

ISABEL MOLINA
Notary Public-State of Florida
Commission # GG 331968
My Commission Expires
May 07, 2023

IA/POLK

**Recorded: 9/30/2021 at 9:15:35.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**Polk County, Iowa**
**Julie M. Haggerty RECORDER**
**Number: 202100103243**
**BK: 18780 PG: 589**

**Document Prepared by:** ISABEL MOLINA, COMMUNITY LOAN SERVICING, LLC, 4425 Ponce De Leon Blvd, 5th Floor, Coral Gables, FL, 33146, (800) 457-5105
**When Recorded Mail To:** DENA NOBLE, C/O AMIP MANAGEMENT, 3020 OLD RANCH PKWY #180, SEAL BEACH, CA, 90740

## CORPORATE ASSIGNMENT OF MORTGAGE



Loan #: ▮▮▮▮ / TS Ref #: 0013180000000637 / Client Ref #: 001247191A
IA/POLK

Assignment Prepared on: August 20, 2021

**Assignor:** COMMUNITY LOAN SERVICING, LLC F/K/A BAYVIEW LOAN SERVICING, LLC, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**Assignee:** BAYVIEW DISPOSITIONS IVB, LLC, at 4425 PONCE DE LEON, 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage dated 6/8/2007, in the amount of $97,470.00, executed by DENNIS A. MINARICH, A SINGLE PERSON to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS and Recorded: 6/11/2007, Instrument #: 2007-00104870, Book: 12234, Page: 366 in POLK County, State of Iowa.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

COMMUNITY LOAN SERVICING, LLC F/K/A BAYVIEW LOAN SERVICING, LLC

On: ___SEP 0 8 2021___

By: _____

Name: _____DAVID BRIGGS_____

Title: _____FIRST VICE PRESIDENT_____

State of FLORIDA
County of MIAMI-DADE

The foregoing instrument was acknowledged before me by means of __ physical presence or __ online notarization, this ___SEP 0 8 2021___, by, DAVID BRIGGS, FIRST VICE PRESIDENT, of COMMUNITY LOAN SERVICING, LLC F/K/A BAYVIEW LOAN SERVICING, LLC a FLORIDA corporation, on behalf of the corporation. He/She is personally known to me or has produced _____ as identification.

WITNESS my hand and official seal,

_____
Isabel Molina
Notary Expires: 5/7/2023 / #: GG 331968

> **ISABEL MOLINA**
> Notary Public-State of Florida
> Commission # GG 331968
> My Commission Expires
> May 07 2023

**IA/POLK**



# FCI Lender Services, Inc.

Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website : www.myfci.com    NMLS #4920    DRE #01022780
PO BOX 28720 Anaheim CA 92809-0157    Fax: (714) 282-5775

# Demand Loan Payoff

| | | | |
|---|---|---|---|
| **Borrower** | Dennis A Minarich | **Servicer** | FCI Lender Services, Inc. |
| | C/O Samuel Z Marks | | 8180 E Kaiser Blvd, |
| | 4225 University Ave. | | Anaheim, CA 92808-2277 |
| | Des Moines, IA 50311 | | 800-931-2424 |
| | Account ▓▓▓▓ | | |

**This Demand Issued by FCI as Loan Servicer hereby Voids All prior Demands In Any Form and Requires the Receiver of this Demand to Call Prior to Payoff to Verify Funds, as Payoff Amounts May Change.**

| | |
|---|---:|
| **Estimated Payoff Date** | **8/1/2023** |
| Loan Maturity Date | 7/1/2062 |
| Interest Paid to Date | 7/1/2022 |
| Next Payment Due Date | 8/1/2022 |
| Unpaid Principal Balance of Loan | $133,282.80 |
| Deferred Unpaid Principal Due | $0.00 |
| Note Interest Rate From Interest Paid To Date | 6.5000 % |
| Current Note Interest Rate (May include Default Interest Rate) | 6.5000 % |
| Note Rate Interest Due from 7/1/2022 to 8/1/2023 | $9,422.89 |
| Default Rate Interest Due from 7/1/2022 to 8/1/2023 (@ 0.0000%) | $0.00 |
| Accrued/Unpaid Interest Due (May include Unpaid Default Interest) | $0.00 |
| Deferred Unpaid Interest Due | $0.00 |
| Unpaid Loan Fees | $0.00 |
| Prepayment Penalty Due | $0.00 |
| Other Payments | $0.00 |
| Late Fees Due from Paid-to-Date | $374.52 |
| Late Fees Unpaid/Due from Previous Payments | $0.00 |
| Late Fees Unpaid/Due & Deferred from Previous Servicer | $0.00 |
| Unpaid Loan Charges or Advances | $858.00 |
| Estimated Payoff Charges from Servicer | $112.00 |
| Suspense Balance | $0.00 |
| Escrow Balance | $3,118.13 |
| Restricted Funds | $0.00 |
| **Estimated Amount to Fully Pay Off this Loan:** | **$147,168.34** |
| | |
| Daily Interest Amount if Paying After: 8/1/2023 | $23.74 |

PLEASE BE ADVISED THAT THIS DEMAND IS ACCURATE AS OF ISSUANCE DATE BUT IT IS SUBJECT TO CHANGE. Additional interest, late charges, fees, and costs may be incurred by the Borrower between the Statement Date and the Payoff Date. ACCORDINGLY, PLEASE CALL (800) 931-2424 ext. 651 TO VERIFY THE PAYOFF AMOUNT PRIOR TO ISSUING PAYMENT. As required by state law, upon receipt of payment in FULL, FCI will process the release of lien, unless directed otherwise by lender.

**Outstanding Checks:**

**Special Instructions:**

**(1)** <span style="color:red">**Only Certified Funds or Wire Transfer will be accepted for Immediate Payoff.**</span>

**(2)** Please make your disbursement payable to: FCI Lender Services, Inc.

**(3)** We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.

**(4) PLEASE NOTE THIS DEMAND EXPIRES AND BECOMES NULL AND VOID ON 08/01/2023, as follows: (A) for Payment by Wire, at 2:00 p.m. PT; and (B) for Payment by Certified Funds, at 5:00 p.m. PT.**

**(5) THE DEMAND FEE IS DUE EVEN IF YOUR TRANSACTION IS CANCELLED.**

Sincerely,

*Niltza Muniz*

Niltza Muniz
FCI Lender Services, Inc.
800-931-2424 x 650
Fax: 714-282-5775

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int. | Acc Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | **Apply To** | | |
| 08/01/2022 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 09/01/2022 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 10/01/2022 | 6.5000% | $ 712.06 | $ 0.00 | $ 712.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 11/01/2022 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 12/01/2022 | 6.5000% | $ 712.06 | $ 0.00 | $ 712.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 01/01/2023 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 02/01/2023 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 03/01/2023 | 6.5000% | $ 664.59 | $ 0.00 | $ 664.59 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 04/01/2023 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 05/01/2023 | 6.5000% | $ 712.06 | $ 0.00 | $ 712.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 06/01/2023 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 07/01/2023 | 6.5000% | $ 712.06 | $ 0.00 | $ 712.06 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 31.21 | $ 0.00 | $ 133,282.80 |
| 08/01/2023 | 6.5000% | $ 735.79 | $ 0.00 | $ 735.79 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 133,282.80 |
| 4 08/01/2023 | 6.5000% | $ 23.74 | $ 0.00 | $ 23.74 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 133,282.80 |
| | | **$ 9,422.89** | **$ 0.00** | **$ 9,422.89** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 0.00** | **$ 374.52** | | |

2 This transaction was already accomplished by the borrower.
3 Rounding adjustment to match total payment amount.
4 Partial Month's Interest
5 Using Default Interest Rate on Defaulted Payment.

| Itemization of Other Fees | | |
|---|---|---|
| **Actual Charge Subject to County Recorder's Office** | | |
| **Description** | **Destination** | **Amount** |
| Payoff Demand Fee | | $30.00 |
| Published Recording Fees | | $17.00 |
| Reconveyance | | $65.00 |
| | | $112.00 |

| Itemization of Unpaid Charges | | | | | |
|---|---|---|---|---|---|
| **Date** | **Description** | **Interest Rate** | **Unpaid Balance** | **Accrued Interest** | **Total Due** |
| 05/05/2023 | Bankruptcy Attorney Fees | 0.000% | $838.00 | $0.00 | $838.00 |
| 05/05/2023 | Property Preservation Costs | 0.000% | $20.00 | $0.00 | $20.00 |
| | | | | | **$858.00** |

| Property List |
|---|
| 3005 Indianola Ave, Des Moines IA 50315 |

# IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). You may file complaints and obtain further information about FCI by contacting the New York State Department of Financial Services Consumer Assistance Unit at 1-800-342-3736 or by visiting the department's website at www.dfs.ny.gov.

**OREGON CONSUMERS ONLY:** Oregon Rule #441-890-0070 - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 800-931-2424 ext. 651 or send an email to customerservice@myfci.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**MARYLAND HOMEOWNERS ONLY:** The Maryland Department of Housing and Community Development (DHCD) has established and administers the Homeowner Assistance Fund (HAF) to provide financial assistance to eligible Maryland homeowners, who are delinquent on their mortgage payments or other housing costs due to COVID-19 related financial hardships, with the goal of avoiding loss of their residences. If you are interested in learning more or checking your eligibility for assistance, please visit the HAF website and its online application portal at https://homeownerassistance.maryland.gov or call the Applicant Support Line, toll free, at (833) 676-0119.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# FCI Lender Services, Inc.

Toll Free: (800) 931-2424 Hrs.: Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
Website : www.myfci.com   NMLS #4920   DRE #01022780
PO BOX 28720 Anaheim CA 92809-0157   Fax: (714) 282-5775

## Loan Reinstatement Calculation

| | |
|---|---|
| **Company:** | FCI Lender Services, Inc. |
| | PO Box 28720 |
| | Anaheim CA 92809-0157 |
| | 800-931-2424 |
| **Borrower:** | Dennis A Minarich |
| | C/O Samuel Z Marks |
| | 4225 University Ave. |
| | Des Moines IA 50311 |

**Summary:**

**Loan Account:** ▮▮▮▮▮▮▮▮

| | |
|---|---|
| Unpaid Installments : | $14,376.07 |
| Unpaid Interest : | $0.00 |
| Unpaid Late Charges : | $0.00 |
| Unpaid Charges: | $858.00 |
| Unpaid Fees: | $0.00 |
| Others Fees: | $0.00 |
| Accrued Late Charges: | $374.52 |
| Reserve Balance: | $0.00 |
| **To Reinstate as of 08/01/2023, Please Pay:** | **$15,608.59** |

**\*On loans secured by properties in California, this Statement may not reflect any or all default interest claimed by the lender as due and payable under the terms of your loan documents.**

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int | Acc. Late Chg | Unpaid Int. Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Balance Forward: | | | | $0.00 | $133,282.80 |
| 08/01/2022 | 6.5000% | $1,098.46 | $44.52 | $735.79 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $133,238.28 |
| 09/01/2022 | 6.5000% | $1,098.46 | $44.76 | $735.55 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $133,193.52 |
| 10/01/2022 | 6.5000% | $1,098.46 | $68.73 | $711.58 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $133,124.79 |
| 11/01/2022 | 6.5000% | $1,098.46 | $45.39 | $734.92 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $133,079.40 |
| 12/01/2022 | 6.5000% | $1,098.46 | $69.34 | $710.97 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $133,010.06 |
| 01/01/2023 | 6.5000% | $1,098.46 | $46.02 | $734.29 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $132,964.04 |
| 02/01/2023 | 6.5000% | $1,098.46 | $46.28 | $734.03 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $132,917.76 |
| 03/01/2023 | 6.5000% | $1,098.46 | $117.54 | $662.77 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $132,800.22 |
| 04/01/2023 | 6.5000% | $1,098.46 | $47.18 | $733.13 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $132,753.04 |
| 05/01/2023 | 6.5000% | $1,098.46 | $71.08 | $709.23 | $0.00 | $318.15 | $0.00 | $0.00 | $31.21 | $0.00 | $132,681.96 |
| 06/01/2023 | 6.5000% | $1,130.49 | $47.83 | $732.48 | $0.00 | $350.18 | $0.00 | $0.00 | $31.21 | $0.00 | $132,634.13 |
| 07/01/2023 | 6.5000% | $1,130.49 | $71.72 | $708.59 | $0.00 | $350.18 | $0.00 | $0.00 | $31.21 | $0.00 | $132,562.41 |
| 08/01/2023 | 6.5000% | $1,130.49 | $48.49 | $731.82 | $0.00 | $350.18 | $0.00 | $0.00 | $0.00 | $0.00 | $132,513.92 |
| | | **$14,376.07** | **$768.88** | **$9,375.15** | **$0.00** | **$4,232.04** | **$0.00** | **$0.00** | **$374.52** | | |

### Unpaid Late Charges Apply To:

| Date Due | Date Received | Days Late | Reference | Late Charge Amount | Amount Paid | Late Charge Due |
|---|---|---|---|---|---|---|
| | | | | | | |

### Itemization of Unpaid Charges

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|---|---|---|---|---|---|
| 05/05/2023 | Bankruptcy Attorney Fees | 0.000% | $838.00 | $0.00 | $838.00 |
| 05/05/2023 | Property Preservation Costs | 0.000% | $20.00 | $0.00 | $20.00 |
| | | | | | $858.00 |

### Property List

3005 Indianola Ave, Des Moines, IA 50315

| Itemization of Other Fees | |
|---|---|
| **Description** | **Amount** |
| | |
| | |

# IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). You may file complaints and obtain further information about FCI by contacting the New York State Department of Financial Services Consumer Assistance Unit at 1-800-342-3736 or by visiting the department's website at www.dfs.ny.gov.

**OREGON CONSUMERS ONLY:** Oregon Rule #441-890-0070 - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 800-931-2424 ext. 651 or send an email to customerservice@myfci.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**MARYLAND HOMEOWNERS ONLY:** The Maryland Department of Housing and Community Development (DHCD) has established and administers the Homeowner Assistance Fund (HAF) to provide financial assistance to eligible Maryland homeowners, who are delinquent on their mortgage payments or other housing costs due to COVID-19 related financial hardships, with the goal of avoiding loss of their residences. If you are interested in learning more or checking your eligibility for assistance, please visit the HAF website and its online application portal at https://homeownerassistance.maryland.gov or call the Applicant Support Line, toll free, at (833) 676-0119.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**